UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| **JERRY HEAD AND RICHARD HEAD,** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) NO. 2:11-00092 |
| | ) |
| **TOWN OF GAINESBORO,** | ) |
| **TENNESSEE; ROGER "POGEY"** | ) |
| **GORE, and PAUL STAFFORD, acting** | ) |
| under color of law and in their official | ) |
| capacity as members of the Town of | ) |
| Gainesboro Board of Aldermen and | ) |
| individually, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

The brothers Head, Jerry and Richard, were the only garbage collectors for the Town of Gainesboro, Tennessee. After they were fired in October 2010, they filed suit in the Chancery Court for Jackson County, claiming that their termination was a result of their campaigning against Robert "Pogey" Gore and Paul Stafford, both of whom were Town Aldermen. Specifically, Plaintiffs brought suit under 42 U.S.C. §1983 and § 1985(3), alleging that their First Amendment rights to free speech were violated, that they were deprived of equal protection in violation of the Fourteenth Amendment, and that Defendants conspired to deprive them of their civil rights.

After the case was removed to this Court, Defendants (which includes the Alderman and the Town of Gainesboro) filed a Motion for Summary Judgment (Docket No. 9), arguing that Plaintiffs' dismissals were not politically motivated, but rather were due to budgetary realities. Because the only competent evidence before the Court supports Defendants' position, their Motion for Summary

1

Judgment will be granted, and this case will be dismissed.

## I. FACTUAL BACKGROUND

In accordance with Local Rule 56.01(b), Defendants filed a "Statement of Material Facts to Which There is no Genuine Dispute ((Docket No. 10), with citation to the record. Despite Local Rule 56.01(c)'s requirement that "[a]ny party opposing the motion for summary judgment must respond to each fact set forth by the movant," Plaintiffs did not respond to the specific facts presented, but rather simply stated in their response brief that "Plaintiffs largely concur with the Defendant's [sic] interpretation of the facts." (Docket No. 15 at 1). As such, and in accordance with Local Rule 56.01(g), the Court must conclude "that the asserted facts are not disputed for purposes of summary judgment."

Defendants' Statement of Material Facts, together with the uncontested Affidavit from John Fox, the Mayor of Gainesboro, show the following to be the relevant facts:

For many years, Jerry and Richard worked as trash collectors for the City of Gainesboro. Generally, Jerry drove while Richard rode on the trash truck. Neither held any other City job.

The trash truck was a 1992 Ford with extensive rear chassis damage. In fact, the compactor needed replacing at a cost of approximately $80,000.

In 2009 and 2010, the Town of Gainesboro experienced very significant shortfalls in its operating budget, primarily due to a steep decline in wholesale liquor taxes, as more towns in the Upper Cumberland region (such as Cookeville, Crossville, Gordonsville and Baxter) began allowing retail liquor sales. Previously, the Town was the go-to destination for those bent on purchasing liquor, unless one wanted to trek to Nashville or Knoxville.[1]

---

[1] The increase in localities selling retail spirits is not set forth in Defendants' Statement of Facts or the Mayor's Affidavit, but the parties agree that liquor taxes made up the bulk of the Town's budget, and that

2

With the increased competition, the Town saw its wholesale liquor taxes more than halve in one year, dropping from $178,250 for fiscal year ending June 30, 2009, to $85,250 for fiscal year ending June 30, 2010. More than that, the Town's actual revenue for the year ending June 30, 2010 was only $26,300.

With this bleak financial picture, the Town initially tried to raise fees, but that was unsuccessful. It then broached the possibility of cutting services and, in the months leading up to the preparation of the fiscal year budget beginning on July 1, 2010, the Alderman discussed eliminating city garbage collection. When the June budget was prepared, it had already been decided that the City would no longer collect trash, and the Alderman set an end date for City pickup of October 1, 2010, so that citizens would have time to make other arrangements for garbage collection.[2]

As a result, the Heads lost their jobs, but they were not alone. Because of the budget cuts, the City also sold its gas department, and Mike Wasill, the only gas department employee, lost his job as well.

The decision to eliminate City trash collection occurred long before the August election for Alderman. While the Heads may have actively campaigned against both Gore and Stafford, Plaintiffs have no evidence that the opposition to those two candidates was the reason that city trash

---

the budget took a big hit when other municipalities allowed retail liquor sales. As stated by Plaintiffs:

> In the 1980's [sic] the TOWN OF GAINESBORO passed a package store ordinance, and whiskey emporiums attracted revelers from throughout the Upper Cumberland. The Town derived much of it's [sic] tax revenue from the sale of spirits. But, during this century, other communities passed similar ordinances, and the Town of Gainesboro faced stiff competition from other locales. When whiskey stores sprang up like mushrooms, the town Solons did little to prevent the Town from going over a financial bluff.

(Docket No. 15 at 2, boldface omitted).

[2] It appears that, to this day, the City does not collect garbage, leaving it instead to private contractors.

3

collection was eliminated and they lost their jobs.

## II. APPLICATION OF LAW

Defendants have moved for summary judgment on all three of Plaintiffs' claims. In response, Plaintiffs only address their first claim – free speach– and thus the Court could consider the remaining two claims – equal protection and conspiracy – as having been abandoned. See, Hicks v. Concorde Career College, 449 Fed. Appx. 484, 487 (6th Cir. 2011) ("The district court properly declined to consider the merits of [a] claim because [plaintiff] failed to address it in either his response to the motion for summary judgment or his response to [defendant's] reply brief"). However, the Sixth Circuit has also stated that "the Federal Rules of Civil Procedure still require the moving party to demonstrate the absence of a disputed question of material fact and a ground that would entitle the moving party to judgment as a matter of law," and, "[w]hen a non-moving party fails to respond, therefore, the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." Miller v. Shore Financial Services, Inc. 141 Fed. Appx. 417, 419 (6th Cir. 2005). Accordingly, the Court considers each of Plaintiffs' claims in turn.

### A. First Amendment Retaliation Claim

"There are three elements to a retaliation claim: (1) the plaintiff was engaged in a constitutionally protected activity; (2) the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights." Jenkins v. Rock Hill Local School Dist., 513 F.3d 580, 585 -586 (6th Cir. 2008) (citing, Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir. 1998)). "If the plaintiff meets this

4

burden, the burden of production shifts to the defendant, . . . but if the defendant can show he would have taken the same action in the absence of the protected activity, he is entitled to summary judgment." Id. (quoting, Thaddeus–X v. Blatter, 175 F.3d 378, 399 (6th Cir. 1999) (en banc)).

According to Plaintiffs, Jerry "(also known as 'Pork Chop') is a well known Jackson County citizen" who has served as an auxiliary police officer, volunteer fireman, and was once the fire chief for the Town. (Docket No. 15 at 1). They claim Jerry "lost his unpaid position because of the political machinations of . . . Defendants, who seem to favor Paul Stafford, Jr., one of the Defendant's sons." (Id.). They also claim that Richard "is a Jackson County commissioner who fought to curtail corruption in local county government," and that, "[i]n years past, [he] had a very public dispute with [Gore] over an issue of public importance." (Id. at 1-2). Plaintiffs also assert that "[t]hey have had numerous differences as this [sic] time, as the personal is always political in Jackson County, a small community in Tennessee's Upper Cumberland." (Id. at 2).

Much of the foregoing is conclusory, is not supported by citation to the record, and the Court has no independent knowledge as to whether the Heads are well known in Jackson county, or whether they have been in internecine disputes with the powers that be in that county. In any event, the only conceivable basis for a First Amendment free speech claim under these allegations is that, at some unidentified point in the past, Richard had a dispute with Gore, but that dispute is not described. This is fatal to a First Amendment retaliation claim because where, "the specific content of the speech is absent from the record, [plaintiff] may not rely on vague generalizations to create a factual issue." Keeling v. Coffee County, 2013 WL 4034415 at *6 (6th Cir. Aug. 8, 2013).

Later in their 4½ page response brief, Plaintiffs claim that "Gore had a particular animus toward the Heads," and that "[i]n their Complaint, the brothers allege that Mr. Gore told several co-

5

workers and constituents that 'the Heads would be gone soon.'" (Docket No. 15 at 3). What the Complaint alleges at this point is irrelevant; it is not evidence (and is not even verified). "When a motion for summary judgment is made and supported by competent evidence, the nonmovant may not rest on his or her pleadings, but must come forward with affidavits or other admissible evidence setting forth 'specific facts showing that there is a genuine issue for trial.'" Mourad v. Homeward Residential, Inc., 517 Fed. Appx. 360, 365-66 (6th Cir. 2013) (quoting, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

Even accepting such statements were made by Gore, and ignoring that Plaintiffs' knowledge of the statements may be based on nothing more than hearsay, Plaintiffs make no effort to establish a causal link between the alleged statement that the "Heads will be gone soon," and the loss of their jobs as trash collectors. Indeed, they do not even state the context in which such statements were allegedly made. For all the Court knows, the statements may have been nothing more than a heads-up to the voters that the Town would no longer provide trash pick-up rather than implying that heads would roll. Further, Plaintiffs do not identify when the statements were allegedly made, so as to at least suggest some sort of a temporal link. See, Dye v. Office of Racing Comm., 702 F.3d 286, 305-06 (6th Cir. 2012) (citation omitted) (discussing temporal proximity in First Amendment retaliation case and indicating that "'causal connection element may be satisfied only where the adverse employment action occurred within a matter of months, or less, of the protected activity.'").

Distilled to its essence, Plaintiffs' First Amendment free speech claim appears to be grounded on the allegation that they were retaliated against after they campaigned against Alderman Gore and Stafford. They write:

> In an era where campaign contributions equate to political speech, Richard and Jerry Head exercised their First Amendment Rights the old-fashioned way. While not

>working their garbage routes, they went door to door and campaigned against the candidacy of Roger Gore and Paul Stafford, Sr. They had campaigned against Defendant Gore in every election, and yet their campaign activity did little to disrupt the day to day operations of the Town of Gainesboro.

(Docket No. 15).

Again, no citation to the record is given for these allegations, nor is there any effort to establish when the Heads may have campaigned in relation to when the decision was made to terminate town trash collection services. Accepting the allegations as true, however, Plaintiffs have not established a jury question on their First Amendment free speech claim.

"[U]nder the Supreme Court's political patronage cases, '[t]he right of political association is well established as falling within the core of activities protected by the First Amendment,'" and the Sixth Circuit has "recognized that '[s]upport of a political candidate falls within the scope of the right of political association.'" Dye, 702 F.3d at 310 (quoting, Sowards v. Loudon County, 203 F.3d 426, 432 (6th Cir. 2000)). But, even where there is protected speech, an employer may discharge an employee for legitimate, non-retaliatory reasons, and it is incumbent upon the employee to "'establish a link between 'the speech in question [and] the defendant's decision to dismiss.'" Burgess v. Paducah Area Transit Auth., 387 Fed. Appx. 538, 545 (6th Cir. 2010) (quoting, Bailey v. Floyd County Bd. of Educ., 106 F.3d 135, 145 (6th Cir. 1997)).

Here, Defendants have presented a legitimate, non-retaliatory reason for Plaintiffs' terminations, to wit, the City's tax base evaporated. It is not that Gainesboro is an empty hearted town, it's merely broke. Without funds to fuel either the gas department or trash-pickup, it chose to dump both services.

As Plaintiffs correctly observe, causation is ordinarily a question for the jury. However, even

7

in the context of First Amendment retaliation cases, "Rule 56 requires the plaintiff to present evidence of evidentiary quality that demonstrates the existence of a genuine issue of material fact." Bailey v. Floyd County Bd. of Educ., 106 F.3d 135, 145 (6th Cir. 1997). "'[M]ere speculation, conjecture, or fantasy' [is] insufficient to survive a motion for summary judgment.'" Clemente v. Vaslo, 679 F.3d 482, 495 (6th Cir. 2012) (quoting, Lewis v. Philip Morris Inc., 355 F.3d 515, 533 (6th Cir. 2004)).

Plaintiffs have directed the Court to no evidence which would suggest that the Town terminated garbage collection services to get back at them, rather than the Town lacked the financial wherewithal to continue those services. While Plaintiffs may truly believe they lost their jobs for the former reason, "*post hoc, propter hoc* reasoning will not defeat the defendant[s'] motion for summary judgment." Bailey, 106 F.3d at 145.

### B. Fourteen Amendment Equal Protection Claim

The Equal Protection Clause prohibits a state from denying to "any person within its jurisdiction the equal protection of the laws." U.S. CONST. Am. XIV, § 1. "The Clause embodies the principle that all persons similarly situated should be treated alike." Scarbrough v. Morgan County Bd. of Educ., 470 F.3d 250, 260 (6th Cir. 2006). "Fundamentally, the Clause protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights." Id. "The threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." Id.

The precise basis for Plaintiffs' Equal Protection claim is unclear; they have not responded to the Motion for Summary Judgment on this claim. At one point in their brief, they make a passing

8

reference to the fact that they were terminated after many years of service, while Defendants "allowed less experienced employees to have jobs with the town." (Docket No. 15 at 5). In their Complaint, which again is not evidence, they alleged that Defendants violated the Equal Protection Clause by "denying Plaintiffs' employment for viewpoints which Defendant find unacceptable or differ from their own." (Docket No. 1-1, Complaint ¶ 26). These unadorned assertion, however, do not an Equal Protection claim make.

The Supreme Court has made clear that the Equal Protection Clause "'embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly,'" and, therefore, "[t]he states cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." Radvansky v. City of Olmsted Falls, 395 F.3d 291, 313 (6th Cir. 2005) (quoting, Vacco v. Quill, 521 U.S. 793, 799 (1997)). According to Defendants, the Heads are white males, and thus are not members of a suspect class.

Although Plaintiffs may have been treated differently in the sense that some town employees kept their jobs while they did not, the Town has forwarded a rational basis for that treatment. This stated justification is subject to "highly deferential" review, "and will result in a holding of unconstitutionality 'only in rare or exceptional circumstances.'" Spurlock v. Fox, 716 F.3d 383, 403 (6th Cir. 2013).

Moreover, "continued employment is not a fundamental right for purposes of the Equal Protection Clause." Franklin v. City of Cookeville, 2012 WL 4193988 at *5 (M.D. Tenn. July 31, 2012) (collecting cases). And, even if Plaintiffs are seeking to proceed on a "class-of-one theory of equal protection-which presupposes that like individuals should be treated alike, and that to treat

9

them differently is to classify them in a way that must survive at least rationality review," that theory is *inapropos* in the public employment context because "[t]o treat employees differently is not to classify them in a way that raises equal protection concerns." Engquist v. Ore. Dep't of Agric., 553 U.S. 591, 609 (2008).

**C. Section 1985(3) Claim**

So far as relevant, Section 1985 provides:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law . . . whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Plaintiffs' Section 1985 claim fails from the start because they have not established a triable issue that their constitutional rights were violated. See, Workman v. Summers, 111 Fed. Appx. 369, 372 (6th Cir. 2004) ("§ 1985(3) is only a remedial statute and establishes no substantive rights," and thus, a conspiracy claim cannot be pursued where plaintiff "has not established a violation of any substantive right"); Betzak Land Co. v. City of Detroit, 298 F.3d 559, 569 (6th Cir. 2002) (same).

Moreover, Plaintiffs' claims are against Aldermen Gore and Stafford and the Town of Gainesboro, but the Sixth Circuit "has adopted the general rule in conspiracy cases that a corporation cannot conspire with its own agents or employees, a rule that applies to claims brought under Section 1985 as well. Upton v. City of Royal Oak, 492 Fed. Appx. 504 (6th Cir. 2012). Thus, under what is commonly known as the intra-corproate conspiracy doctrine, where all of the defendants are members of the same collective entity, the law does not recognize the existence of two or more

10

persons which is an essential component of a conspiracy claim.  Id.; accord, Cuyahoga Valley Joint Vocational School Dis. Board of Education, 926 F.2d 505, 510 (6th Cir. 1991;) Doherty v. American Motors Corp., 728 F.2d 334, 339 (6th Cir. 1984).

Finally, with respect to this claim and the others as well, two further points are worthy of note.  First, in his deposition, Jerry conceded that his quarrel with the Aldermen was based on how they voted in Town meetings and to the extent that his claims are based upon that belief (and Richard concurs in that belief) Gore and Stafford are entitled to absolute immunity.  See, Bogan v. Scott-Harris, 523 U.S. 44, 48 (1998) (local legislators are absolutely immune from liability when they act in their legislative capacities).  Second, because there is no *respondeat superior* liability against a municipality, Monell v. New Your City Dep't of Soc. Servs., 436 U.S. 658, 692-94 (1978), to succeed their claims against the Town of Gainesboro, Plaintiffs must establish an "official policy or custom [that] actually serve[d] to deprive [them of their] constitutional rights," Gregory v. City of Louisville, 444 F.3d 725, 752 (6th Cir. 2012), but they have not done so.

### III.  CONCLUSION

On the basis of the foregoing, Defendants' Motion for Summary Judgment will be granted, and Plaintiffs' claims will be dismissed with prejudice.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

11